*Orphans' Court of Philadelphia County.*

## ESTATE OF MARY C. STEVENSON, DECEASED.

An administrator who can clearly and satisfactorily purge himself of an alleged contempt of an order to pay as per decree, may be discharged from imprisonment.

A discharge in the Commom Pleas under the insolvent laws will not entitle the party to his discharge in this court if in custody for contempt.

The administrator having filed his account, the same was adjudicated, distribution made, and finally confirmed. A rule on the administrator to pay over was obtained, followed by an attachment for non-compliance with the order, under which his body was taken into custody, and committed to jail for contempt of the court's order to pay.

William Ernst., Esq., presented the petition of the administrator setting forth the above facts, and the inability of the petitioner to comply with the order, and concluding with a prayer that the petitioner be permitted to appear *in person* before the court, and under his corporal oath submit to an examination, with a view to purge himself of the said alleged contempt.

The court, after a hearing of all parties interested, granted the prayer of the petitioner, who was heard in open court on February 24, 1879, before a full bench. The testimony disclosed these material facts: That the petitioner, on the same day upon which he received the estate's money, placed it for safe keeping with one of the sureties in his administration bond, from whom he took a receipt, describing the character of the fund, and providing for its forthcoming when required for distribution. That when the period of distribution arrived the administrator was unable to produce the money, owing to its embezzlement by the surety, who had departed the country. That the petitioner had no means of his own whatever from which to pay the money, and was unable to procure any for that purpose. That he had not parted with his own moneys or property by any of the unlawful acts or practices mentioned by the insolvent laws.

Mr. Ernst, of counsel for petitioner, argued that if the alleged contempt resulted from the petitioner's inability to pay, or comply with the court's order, then the petitioner might be deprived of his liberty for life, if his inability to

pay should continue·that long.    That under the Act of March 29, 1832, the Orphans' Court can enforce its orders by attachment and arrest of the ·body, where the act or matter to be done is clearly *within the power* of the party directed to do the act, and there being no excuse or reason to the contrary.    On the other hand, if the party can show his utter inability to comply with the order, that fact is an answer to the order, and purges himself of the contempt, although no release of the liability or indebtedness.    Ex Parte William II. Blumer, 35   Legal Intelligencer, 269, does not apply.    That was a petition in the Common Pleas for a discharge under the insolvent act, and even if resorted to by the petitioner, would not dispose of the question of contempt committed in this court, and the petitioner could not get his discharge therefrom.    This court so decided in Spear's Estate, 1 W. N. 637, where the Common Pleas, under the insolvent act, discharged the petitioner, but this court directed the sheriff to hold him in custody for an existing contempt committed before his discharge in the Common Pleas.    It therefore follows that, unless there is relief by hearing and purgation, a commitment for contempt would be indefinite, although under the criminal jurisdiction every transgressor receives a definite term of sentence.

J. Levering Jones and T. J. Asthon, *contra,* resisted the application to discharge, relying on Blumer's Estate, *supra.* That the court under the act of 1832 and the uniform practice, had always exercised the power of attachment and arrest as a means of enforcing its orders.    That the petitioner should be held in custody at least sixty days, in analogy to the case under the insolvent acts.

The court made the following order:   "The administrator, Jesse A. T. Laws. having appeared in open court in obedience to their order, to submit to an examination,with a view of purging himself of the alleged contempt of court in not complying with their order to pay over certain money, as per order and decree, and upon due hearing, under· oath, in the presence of all parties interested the said administrator having purged himself of the said alleged contempt to the satisfaction of the court, it is therefore

adjudged, ordered, and decreed that the said administrator be and is hereby discharged from further custody and confinement.

## NOTES OF RECENT DECISIONS IN SUPREME COURT OF PENNSYLVANIA.

The plaintiff alleged that his lumber, piled up 100 yards from the defendant's track, was set on fire in consequence of the escape of large cinders from the defendant's locomotive, which cinders ignited certain rubbish and brush on the land of a third person; the fire was then spread by the wind to similar objects on the plaintiff's land which was immediately adjacent, and then to the lumber, which was destroyed two hours after the beginning of the fire, which could not be extinguished by any efforts.   There was some evidence, on the part of the defendant, opposed to this theory of the origin and the continuity of the fire.   The Court below left it to the jury to say whether the defendant's negligence, if any there was, was the proximate or remote cause of the injury:

*Held* (affirming the judgment of the Court below), that this question was rightly submitted to the jury.

A number of witnesses having testified that the defendant's locomotive sent out excessively large sparks on the day of the fire, the defendant testified that upon that day the locomotive was provided with the most perfect spark arrester The Court below refused to charge that there was no proof of any want of care in the working of the locomotive:

*Held* (affirming the judgment below), that the question of negligence was one of fact, and rightly submitted to the jury.—*Lehigh Valley R. R. Co. vs. McKeen.*

The claim for the benefit of the exemption laws by a defendant who is served in an attachment execution must be made at the term to which the process is returnable, and before the plaintiff has taken any step to his detriment. A claim not made until after the plaintiff has filed interrogataries and proof of service of a rule to answer is too late.   Bittenger's Appeal, 26 Sm. 105, followed.—*Maloney vs. Entriken.*

Real estate cannot be attached under the Act of March 16, 1869.—*Bank vs Draper.*

---

The plaintiffs' storehouse, situated ninety feet from the defendants' railroad track, was destroyed by fire, resulting from loose straw in the yard being ignited by large sparks from the defendants' locomotive. The Court below left it to the jury to determine whether the defendants' negligence in allowing the escape of large sparks was the remote or proximate cause of the injury:

*Held*, that the question was properly submitted to the jury.

R. R. Co. v. Hope, 30 Sm. 373, followed.—*Pa. & N. Y. Canal & R. R. Co. vs. Lacey.*

---

The Act of July 11, 1842 (P. L. 331), provided that where township lines divided a tract of land, assessments for taxes should be made in the township in which the mansion house was situated. E. purchased successively four tracts of land; two being situated within a township and two within the limits of a borough. The borough line separated the tracts. The mansion house was situated upon one of the township tracts, and all the parcels were used by E. as a single farm:

*Held*, that the assessment for taxes should be made in the township only.—*Bennethum vs. Eckert.*

---

A mere technical levy upon real estate under judicial process, unaccompanied by change of possession or increase of risk, will not avoid a policy of insurance containing a condition that the insurance "should cease from the time the property insured should be levied upon, or taken into possession or custody under any proceeding in law or in equity."

Parol evidence is admissible to prove that an agent, whose duty it was to take down answers to questions in the application for a policy of insurance, and to certify to the company the correctness of the answers, which by the terms of the policy were warranties, had either negligently or intentionally written an erroneous or ambiguous answer. —*Smith vs. F. & M. M. Fire Ins. Co.*